UNITED STATES DISTRICT COURT
DISTRICT OF MINNESOTA

| | |
|---|---|
| T.F., by his next friend Tracy Keller; K.D., by his next friend Laura Ferenci; C.O, by her next friend Laura Ferenci; L.L, by his next friend Gerald Kegler; T.T., by their next friend Dr. Caryn Zembrosky; M.T., by their next friend Dr. Caryn Zembrosky; T.M., by their next friend James Dorsey; T.E., by their next friend James Dorsey; A.T., by their next friend James Dorsey; A.W., by his next friend Margaret Shulman; I.W., by their next friend Gloria Anderson; D.W., by their next friend Gloria Anderson; and B.W., by their next friend Gloria Anderson; individually and on behalf of all others similarly situated, | Civ. No. 17-1826 (PAM/BRT) |
| Plaintiffs, | |
| v. | **MEMORANDUM AND ORDER** |
| Hennepin County; Hennepin County Department of Human Services and Public Health; David J. Hough, Hennepin County Administrator; Jennifer DeCubellis, Hennepin County Deputy Administrator for Health and Human Services; Jodi Wentland, Hennepin County Director of Human Services; Janine Moore, Director, Hennepin County Child and Family Services; and Emily Piper, Commissioner, Minnesota Department of Human Services, | |
| Defendants. | |

This matter is before the Court on Defendants' Motions to Dismiss. For the following reasons, the Motions are granted in part and denied in part.

**BACKGROUND**

Plaintiffs are thirteen children[1] who are currently or who have been under the care of Hennepin County's child-protection system. Many of them have suffered abuse and neglect at the hands of both their biological and foster families. Plaintiffs allege that Hennepin County's child-protection system is not doing all that it should to protect children in the system, by failing to have a sufficient number of caseworkers to handle the caseload, failing to investigate or assess reports of alleged abuse or neglect, failing to conduct complete investigations when it does investigate those reports, and offering services to families that are inadequate to protect the children in those families. (Am. Compl. (Docket No. 45) ¶ 6.) Indeed, all parties acknowledge that a 2015 report by Casey Family Services found serious and systemic problems in Hennepin County's system. (Id. ¶¶ 263-66.)

Plaintiffs seek to represent two classes of children: the "special relationship" class, which consists of all children who are or will be under the protection of the County's child-protection system, and the "maltreatment" class, which consists of children who are or will be the subject of maltreatment reports in Hennepin County. (Id. ¶ 33.) Named as Defendants are the Commissioner of the Minnesota Department of Human Services, Hennepin County, Hennepin County's Department of Human Services and Public Health, and officials in Hennepin County's Department of Human Services.

---

[1] Because minors are considered incompetent parties, all Plaintiffs appear through "next friends." Defendants challenge the authenticity of some of the "next friends," but an inquiry into the status of the relationship between the next friends and the child Plaintiffs is not appropriate at this early stage of the litigation, nor is it relevant to the issues before the Court on these Motions.

Plaintiffs' Amended Complaint raises four claims.  The first cause of action, brought under 42 U.S.C. § 1983, contends that Defendants violated Plaintiffs' substantive due process rights by maintaining a policy, pattern, practice or custom that amounts to deliberate indifference to Plaintiffs' constitutional rights to care and protection from harm.  (Id. ¶ 367.)  The second cause of action, also brought under § 1983, contends that Defendants violated the First, Ninth, and Fourteenth Amendments to the Constitution by failing to "take all reasonable efforts toward securing a permanent home" for Plaintiffs. (Id. ¶ 373.)  Plaintiffs' third cause of action claims a violation of the Adoption Assistance and Child Welfare Act of 1980 ("CWA"), 42 U.S.C. § 670 et seq.  (Id. ¶ 376.)  The final cause of action alleges that Hennepin County and the County officials were negligent in the investigation and intervention of child abuse and neglect, in violation of Minn. Stat. § 626.556.  (Id. ¶¶ 378-87.)  Plaintiffs seek declaratory judgments that Defendants are violating their rights and the rights of the class members, and ask that the Court appoint a special master to ensure that the problems with the system are fixed.  (Id. at 92-93.)

The Commissioner and the County Defendants have separately moved to dismiss the claims against them, but the majority of their arguments are the same.  They contend that abstention principles prevent the Court from exercising jurisdiction, that Plaintiffs rely on a right that does not exist, that Plaintiffs have not pled sufficient facts to support their substantive due process claims, and that there is no private right of action under the CWA.  The Commissioner also contends that Plaintiffs' § 1983 claims against her fail because they rely on supervisory liability, which is not available under § 1983. And the County Defendants assert that the negligence claim is not well pleaded.

3

## DISCUSSION

### A. Common Issues

#### 1. Abstention

Defendants argue that the Court should abstain from hearing all of Plaintiffs' claims pursuant to Younger v. Harris, 401 U.S. 37 (1971), or O'Shea v. Littleton, 414 U.S. 488 (1974). Defendants note that Minnesota's juvenile courts are heavily involved in all child-protection decisions and exercise ongoing jurisdiction over children in the foster-care system. Indeed, under Minnesota law, the juvenile courts have "original and exclusive jurisdiction" over children in foster care. Minn. Stat. § 260C.101, subd. 1. Minnesota's juvenile courts are responsible for placing children in the child-protection system. See id. § 626.556, subd. 10m(b) (providing framework for child-in-need-of-protection petitions); id. § 260C.202(a) (stating that a court orders placement of children in foster care). The juvenile courts are also charged with reviewing a child's foster-care placement every 90 days. Id. § 260C.202(b). Defendants contend that the juvenile courts' involvement in all aspects of the County's child-protection system counsels against federal-court interference in that system.

a. Younger abstention

Younger requires federal courts to decline to hear challenges to pending state actions involving important state interests. See, e.g., Middlesex Cty. Ethics Comm. v. Garden State Bar Ass'n, 457 U.S. 423, 432 (1982) (dismissal appropriate in light of pending attorney disciplinary proceeding); Moore v. Sims, 442 U.S. 415 (1979) (dismissal appropriate in light of pending child-custody proceedings). Younger

abstention applies in three circumstances: pending state criminal proceedings, pending state civil proceedings "that are akin to criminal prosecutions," or "civil proceedings involving certain orders that are uniquely in furtherance of the state courts' ability to perform their judicial functions." Sprint Commc'ns, Inc. v. Jacobs, 134 S. Ct. 584, 588 (2013) (citing New Orleans Pub. Serv., Inc., v. Council of City of New Orleans ("NOPSI"), 491 U.S. 350, 367-68 (1989)). To determine whether abstention is appropriate, "[t]he question . . . is threefold: first, do [the proceedings] constitute an ongoing state judicial proceeding; second, do the proceedings implicate important state interests; and third, is there an adequate opportunity in the state proceedings to raise constitutional challenges." Middlesex Cty. Ethics Comm., 457 U.S. at 432 (emphasis omitted).

Defendants argue that federal courts routinely apply Younger to abstain in matters concerning a state's child welfare system. But the cases on which Defendants rely are not on point. A request to intervene in a child-custody dispute between divorced or divorcing parents involves a different kind of state judicial proceeding than that at issue here, where the juvenile court conducts a quasi-administrative review of each county's child-protection decisions. See, e.g., Carlson v. Cty. of Ramsey, No. 16cv765, 2016 WL 3352196, at *6 (D. Minn. June 15, 2016) (Nelson, J.) (finding Younger abstention appropriate in parent's challenge to state court's custody and visitation-rights ruling); see also Tony Alamo Christian Ministries v. Selig, 664 F.3d 1245, 1247 (8th Cir. 2012) (determining that Younger abstention precluded federal court from ruling on child custody dispute). As these decisions imply, a federal court ruling that a state court's

5

custody determination is erroneous constitutes the sort of "interference" with state court proceedings that Younger prohibits.

There can be no dispute that there are ongoing state judicial proceedings here. The relevant question, however, is "whether the federal proceeding will interfere with" those proceedings. 31 Foster Children v. Bush, 329 F.3d 1255, 1276 (11th Cir. 2003). Plaintiffs argue that their claims seek relief against executive-branch officials, not against any judicial proceeding, and thus that this proceeding will not interfere with any pending juvenile court proceeding. See NOPSI, 491 U.S. at 368 (stating that Younger does not "require[] abstention in deference to a state judicial proceeding reviewing legislative or executive action"). And the Supreme Court has cautioned that "[c]ircumstances fitting within the Younger doctrine . . . are 'exceptional.'" Sprint Commc'ns, 134 S. Ct. at 588 (quoting NOPSI, 491 U.S. at 367-68).

The judicial proceedings underlying this case do not fit within the narrow categories outlined in NOPSI. They are not criminal prosecutions, civil enforcement proceedings, or proceedings "that are uniquely in furtherance of the state courts' ability to perform their judicial functions." NOPSI, 491 U.S. at 368. In the absence of these circumstances, "the pendency of an action in [a] state court is no bar to proceedings concerning the same matter in the Federal court having jurisdiction." Colo. River Water Conservation Dist. v. United States, 424 U.S. 800, 817 (1976) (quotation omitted). Nor will Plaintiffs' requested relief interfere directly with any pending judicial proceedings. Plaintiffs ask for declaratory judgments that various actions or inactions on the part of Hennepin County's child protection officials violate their constitutional and statutory

6

rights (Am. Compl. at 92), and also seek the appointment of a special master to oversee the County's compliance with federal and state law. (Id. at 92-94.) While the special master's work might duplicate the work of a juvenile court proceeding, it will not interfere with that proceeding.

Defendants have not established that abstention is appropriate under the principles espoused in Younger and its progeny. The Motion on this basis is therefore denied.

      b.     O'Shea abstention

In O'Shea v. Littleton, the Supreme Court counseled against federal audits of state judicial proceedings, accomplishing "the kind of interference that Younger . . . and related cases sought to prevent." O'Shea, 414 U.S. at 500. Defendants argue that Plaintiffs' request for a special master to oversee all aspects of the County's foster-care system amounts to the kind of "ongoing federal audit" that O'Shea prohibits. Id.

O'Shea noted that "principles of equity, comity, and federalism . . . must restrain a federal court when asked to enjoin a state court proceeding. Id. at 499 (quoting Mitchum v. Foster, 407 U.S. 225, 243 (1972)). Although Plaintiffs do not ask for an injunction, Defendants argue that the appointment of a special master would effectively enjoin Minnesota's juvenile courts. See Old Republic Union Ins. Co. v. Tillis Trucking Co., 124 F.3d 1258, 1261 (11th Cir. 1997) (stating that the principles of Younger applied to declaratory judgments that would effectively enjoin state proceedings).

Where there is a potential for conflicting federal and state court orders, abstention is appropriate. E.g., 31 Foster Children, 329 F.3d at 1278 (noting that abstention was warranted, in part, because the "federal and state courts could well differ, issuing

7

conflicting orders about what is best for a particular [child]").  Here, however, Plaintiffs do not ask for relief that supplants the decisionmaking authority of the state courts. Rather, Plaintiffs ask for the special master to oversee the work of Hennepin County's child-protection system, to ensure that children are receiving the services state law guarantees them.  Cf., id. (noting that the plaintiffs' requested relief included determinations regarding "whether a particular placement is safe or appropriate").  Thus, the relief requested is not "directly aimed at the functioning of the juvenile courts." Tinsley v. McKay, 156 F. Supp. 3d 1024, 1043 (D. Ariz. 2015).  Plaintiffs ask that the special master ensure that Hennepin County officials are complying with state and federal law, not that the juvenile courts are complying with the law.  (See Am. Compl. 93-94 ¶ 3(a)-(n).)[2]  This requested relief does not implicate "sensitive federalism concerns." Horne v. Flores, 557 U.S. 433, 448 (2009).

Although Minnesota's juvenile courts have significant responsibilities in foster-care cases, Plaintiffs do not claim "any statutory or constitutional violations in the procedure or administration of" those courts.  Tinsley, 156 F. Supp. 3d at 1044.  Rather, Plaintiffs claim that state and County officials are not complying with either their federally mandated requirements or the orders of the juvenile courts because of the systemic problems this lawsuit seeks to address.  The principles of O'Shea do not apply.

---

[22] For example, Plaintiffs ask that the special master require Hennepin County to employ sufficient caseworkers, develop foster-care placements, recruit adoptive families, and to provide data on its compliance with federal law in this regard.

### 2. Constitutional Claims

#### a. Conscience-shocking standard

Defendants argue that Plaintiffs have failed to allege sufficient facts to establish their substantive due process claim. There is no dispute that a state has a duty "to protect individuals who are in its custody," including children placed in foster care. James ex rel James v. Friend, 458 F.3d 726, 730 (8th Cir. 2006). In the context of this relationship, a substantive due process violation exists "only if the official conduct or inaction is so egregious or outrageous that it is conscience-shocking." Id. Moreover, an "officials' conduct will not be found to be conscience-shocking unless the officials acted with deliberate indifference." Id.

Whether particular action or inaction shocks the conscience is necessarily fact-dependent. Plaintiffs have alleged that Defendants ignored the dangers and harms the systemic failures created for children in their care. Plaintiffs' allegations include a description of the unspeakable things that have happened to each of them during their time in the Hennepin County foster-care system. At this stage of the litigation, Plaintiffs' substantive due process claim survives because they have sufficiently pled deliberate indifference.

#### b. "Right to a permanent home"

Plaintiffs' second constitutional claim asserts that Defendants violated Plaintiffs' constitutional rights by failing to "take all reasonable efforts toward securing a permanent home" for Plaintiffs. (Am. Compl. ¶ 373.) But as Defendants point out, there is no constitutional right to a permanent home.

Plaintiffs deny that they seek a right to a permanent home, contending instead that the right at issue is the "right to be free from harm and to have their basic human needs met" in a system that promotes "the goal of finding them a permanent home." (Pls.' Opp'n Mem. (Docket No. 63) at 43.)  But Plaintiffs cannot escape the allegations in their Amended Complaint, which seeks to vindicate a "right to a permanent home" (Am. Compl. ¶ 374), not a right to be free from harm or to have their basic needs met.

Plaintiffs implicitly acknowledge that there is no constitutional right to a permanent home.  Their second cause of action is dismissed without prejudice.

### 3. CWA

Plaintiffs' third cause of action contends that Defendants violated the CWA by failing to provide a written case plan (Am. Compl. ¶¶ 376(a), (b), (c)) or a case review system (id. ¶ 376(d)), that complies with §§ 675(1)(B), 675(5)(A), and 671(a)(16) of the CWA.

42 U.S.C. § 1983 provides a federal cause of action against those who, under color of state law, deprive a person of "rights, privileges, or immunities secured by the Constitution and laws."  "[T]his provision safeguards certain rights conferred by federal statutes," although it vindicates "the violation of a federal right, not merely a violation of federal law."  Blessing v. Freestone, 520 U.S. 329, 340 (1997) (citation and emphases omitted). Thus, Plaintiffs may use § 1983 to enforce the CWA, but only if the sections of the CWA at issue create an individual right.  Id.  Whether a statute creates an individual right depends on several factors, including whether Congress intended the provision to benefit someone in the plaintiff's position, whether the right is "not so 'vague and

10

amorphous' that its enforcement would strain judicial competence," and whether the statute "unambiguously impose[s] a binding obligation on the States." Id. at 340-41. A statute meeting all three elements of this test is "presumptively enforceable" under § 1983. Midwest Foster Care & Adoption Ass'n v. Kincade, 712 F.3d 1190, 1195-96 (8th Cir. 2013). And the statute only meets the first prong of the test if Congress "unambiguously conferred" the right. Gonzaga Univ. v. Doe, 536 U.S. 273, 283 (2002).

"The CWA is a piece of Spending Clause legislation that creates a cooperative state-federal program to fund foster care and adoption assistance." Kincade, 712 F.3d at 1194. Each state's eligibility for these funds is predicated on compliance with certain statutory requirements. The Secretary of the federal Department of Health and Human Services oversees the states' compliance, and may withhold funding if a state is not in substantial compliance with the statute's dictates. See 42 U.S.C. §§ 1320a-2a(a)(3), (b)(3). If a state fails to substantially comply, the Secretary may withhold federal matching funds or take other corrective measures. Id. § 1320a-2a(b).

Plaintiffs claim that the statute also confers rights on them to enforce the statute's requirements. But there can be no private right of action to enforce two of the sections on which Plaintiffs rely for their claims, §§ 675(1)(B) and § 675(5)(A). Section 675 is the definition section of the statute, and "[f]inding an enforceable right solely within a purely definitional section is antithetical to requiring unambiguous congressional intent." Kincade, 712 F.3d at 1197. Thus, to succeed on their CWA claims, the Court must determine whether there is a private right of action to enforce the substantive section on which Plaintiffs rely, § 671(a)(16). This section provides:

> In order for a State to be eligible for payments under this part, it shall have a plan approved by the Secretary which . . . provides for the development of a case plan (as defined in section 675(1) of this title and in accordance with the requirements of section 675a of this title) for each child receiving foster care maintenance payments under the State plan and provides for a case review system which meets the requirements described in sections 675(5) and 675a of this title with respect to each such child.

42 U.S.C. § 671(a)(16).

According to Plaintiffs, the language in § 671(a)(16) requiring a case plan "for each child" and a case review system "with respect to each such child" confers rights on those children to enforce the statute's requirements. Plaintiffs' focus on the "each child" language in this section, however, is inappropriately narrow. Plaintiffs ignore the language of the section as a whole, which addresses the requirements a state must meet to be eligible for funding: "In order for a State to be eligible for payments . . . ." Id. This state-focused language is in sharp contrast with statutes that clearly confer individual rights, such as Title IX, which provides that "[n]o person . . . shall . . . be subjected to discrimination." Kincade, 712 F.3d at 1197 (quoting 20 U.S.C. 1681(a)). And although it may be that the CWA evinces an intent that each foster child benefit from the case-plan and case-review-system requirements, "[t]he ability to locate a nexus between § 1983 plaintiffs and a benefit conferred by a statute is necessary but not sufficient" to finding an individually enforceable right. Id. at 1199. Unless the statute is "phrased in terms of the persons benefitted," there is no individual right conferred. Gonzaga, 536 U.S. at 284 (quotation omitted).

In Kincade, the Eighth Circuit Court of Appeals found that there was no private right of action under the foster-care maintenance payment section of the CWA. This

12

section provides that "[e]ach State . . . shall make foster care maintenance payments on behalf of each child who has been removed from the home of a relative . . . into foster care." 42 U.S.C. § 672(a)(1). Foster-care providers in Missouri sued, contending that the state was not providing payments sufficient to meet the requirements of the CWA. Kincade, 712 F.3d at 1193. The Court of Appeals determined that the providers could not sue under § 672, because that section is directed to "the states as regulated participants in the CWA" and not to individuals. Id. at 1197.

Even more recently, the Eighth Circuit determined that there is no private right of action under the Medicaid Act. Does v. Gillespie, 867 F.3d 1034, 1037 (8th Cir. 2017). At issue in Gillespie was the provider-choice provision of Medicaid. This provision requires a state Medicaid plan to provide "any individual eligible for medical assistance (including drugs) . . . such assistance from any [provider] qualified to perform the service or services required." 42 U.S.C. §1396a(a)(23)(A). The Gillespie plaintiffs were women who wanted to use Planned Parenthood's services after Arkansas terminated Planned Parenthood as an approved Medicaid provider. Gillespie, 867 F.3d at 1038. The plaintiffs asserted that this provision's use of "any individual" meant that the rights conferred were privately enforceable through § 1983. Id. at 1042. The Court of Appeals disagreed, noting that the provision is "phrased as a directive to the federal agency charged with approving state Medicaid plans, not as a conferral of the right to sue upon the beneficiaries of the State's decision to participate in Medicaid." Id. at 1041 (quoting Armstrong v. Exceptional Child Ctr., Inc., 135 S. Ct. 1378, 1387 (2015)). Similarly, the provision at issue here is phrased as a directive to states regarding what the state must do

to be eligible for foster-care and adoption-assistance payments, not as an "unambiguously conferred right," Gonzaga, 536 U.S. at 283, for the children mentioned in the case plan section. See, e.g., Carson P. ex rel Foreman v. Heineman, 240 F.R.D. 456, 544 (D. Neb. 2007) (noting that § 671(a)(16) is "not concerned with 'whether the needs of any particular person have been satisfied'" and is therefore not individually enforceable) (quoting Gonzaga, 536 U.S. at 288-89).

But many courts have agreed with Plaintiffs' position. See, e.g., Henry A. v. Willden, 678 F.3d 991, 1006 (9th Cir. 2012) ("We . . . join the majority of federal courts in holding that the case plan provisions [of § 671(a)(16)] are enforceable through § 1983.") (citing cases). These decisions have found that the section's use of "shall" and focus on the requirement "for each child" "expresses a clear mandate" that the section is individually enforceable. Id. at 1006-07 (quoting Connor B. ex rel Vigurs v. Patrick, 771 F. Supp. 2d 142, 171 (D. Mass. 2011)). The Court is not persuaded that the Eighth Circuit would follow the reasoning of these cases, however. The decision in Henry A., for example, rested in part on the fact that the Ninth Circuit had earlier determined that § 672(a) created an individually enforceable right. Id. at 1007. But in Kincade, contrary to the Ninth Circuit's resolution of the issue, the Eighth Circuit held that § 672(a) was not privately enforceable under § 1983. Kincade, 712 F.3d at 1203. Especially in light of Gillespie's emphasis on a narrow interpretation of Blessing's individual-enforcement requirements, Plaintiffs have not established that § 671(a)(16) is individually enforceable.

In addition to the lack of rights-creating language in the statute, other legislative history indicates that Congress did not intend § 671(a)(16) to be individually enforceable.

14

In 1996, Congress amended the CWA to explicitly provide that "[a]ny individual who is aggrieved by a violation of Section 671(a)(18) of this title by a State or other entity may bring an action seeking relief from the State or other entity in any United States district court." Small Business Job Protection Act of 1996, Pub. L. No. 104-188, tit. I, § 1808(b), 110 Stat. 1903; see 42 U.S.C. § 674(d)(3)(A). Congress's choice to amend the statute to include a private right of action for a violation of § 671(a)(18) and not any of § 671(a)'s other requirements "is strong evidence that Congress did not intend these other various State plan elements in . . . § 671(a) to confer rights enforceable pursuant to § 1983." Charlie H. v. Whitman, 83 F. Supp. 2d 476, 489 (D.N.J. 2000).

Section 671(a)(16) does not unambiguously confer rights on Plaintiffs to enforce the section's case-plan and case-review-system requirements. Their CWA claim is therefore dismissed.

## B.   DHS Commissioner's Motion

### 1.   Official Capacity

Plaintiffs' claims against Commissioner Piper are brought against her in her official capacity. As such, under § 1983, Plaintiffs must establish that the governmental entity, here the Minnesota Department of Human Services, was the "moving force" behind the violations they allege. Nix v. Norman, 879 F.2d 429, 432 (8th Cir. 1989). In other words, to succeed on pleading official-capacity claims against the Commissioner, Plaintiffs must either identify a state policy or custom that played a part in the alleged violation of their constitutional rights, or that the Commissioner had final authority over the subject matter and exercised her authority in an unconstitutional way. Id. at 433.

It is important to note that Plaintiffs seek only equitable relief, and thus the typical official-immunity issues do not apply. Edelman v. Jordan, 415 U.S. 651, 667 (1974); see also Will v. Mich. Dep't of State Police, 491 U.S. 58, 71 (1989) (finding that because official-capacity actions for injunctive relief are not treated as actions against the state, officials sued in their official capacities for prospective relief are "persons" under § 1983). And Plaintiffs' allegations fit within the Nix framework: Plaintiffs contend that the Commissioner had final authority over the foster-care system and failed to exercise that authority in a way that violated individuals' constitutional rights. Whether Plaintiffs will ultimately marshal enough evidence to prove these allegations is not an appropriate inquiry at this stage. For purposes of Rule 12(b)(6), Plaintiffs have plausibly pleaded this claim.

### 2. Substantive Due Process

The Commissioner also argues that Plaintiffs' substantive due process claim against her fails because she is not in a special relationship with Plaintiffs. She asserts that all Plaintiffs are in the custody of the County, not DHS.

The parties do not dispute that the state or the County creates a "special custodial relationship" with a child when the entity removes the child "from his caregiver and place[s] him in foster care." Norfleet ex rel Norfleet v. Ark. Dep't of Human Servs., 989 F.2d 289, 293 (8th Cir. 1993). This special relationship gives rise to certain obligations, such as the duty "to provide adequate medical care, protection[,] and supervision." Id.

Four of the thirteen Plaintiffs are in legal custody of the state, not Hennepin County, although the County has the responsibility to provide care for these four

Plaintiffs, just as it does for the nine who are in the County's legal custody. There is clearly a special relationship between the state and those four children that could give rise to a substantive due process claim. It is irrelevant who has the immediate authority over these four children. By assuming legal custody over them, the state has the requisite special relationship with them to undergird their substantive due process claim, at least for purposes of a motion to dismiss.

As to the Plaintiffs who are not legal wards of the state, Plaintiffs' theory is that the requisite special relationship exists by virtue over the monitoring authority the Commissioner retains over every county foster-care system. But as the Commissioner argues, this is essentially an allegation of supervisory liability, which is not appropriate under § 1983. Indeed, in their opposition memorandum, Plaintiffs argue that the Commissioner "retain[s] a significant supervisory role over how funds are distributed to Hennepin County and for monitoring child welfare systems." (Pls.' Opp'n Mem. at 62.) The Commissioner's supervisory functions do not create a special relationship with all children in the County's foster-care system, however. As to any Plaintiff who is not a ward of the state, Plaintiffs' substantive due-process claim against Commissioner Piper fails.

## C. County Defendants' Motion

### 1. Negligence

Plaintiffs' negligence claim is brought only against the County Defendants, and only on behalf of the maltreatment report class. It alleges that the County Defendants "have performed negligent and inadequate [maltreatment] investigations" to the

17

detriment of Plaintiffs. (Am. Compl. ¶ 383.) According to the allegations, because of these negligent investigations, Plaintiffs "have been, and are at risk of being, deprived of their statutory entitlement to the performance of appropriate and adequate investigations and family assessments when there are reports of child abuse or neglect." (Id. ¶ 387.)

The County Defendants argue that the negligence claim is barred by statutory immunity. Under Minnesota law, statutory immunity protects governmental entities from liability for "[a]ny claim based upon the performance or the failure to exercise or perform a discretionary function or duty, whether or not the discretion is abused." Minn. Stat. § 466.03, subd. 6. "Statutory immunity is extended when there has been a planning-level decision; that is, social, political, or economic considerations have been evaluated and weighed as part of the decision-making process." Schroeder v. St. Louis Cty., 708 N.W.2d 497, 504 (Minn. 2006). But it "does not extend to operational-level decisions, those involving day-to-day operations of government, the application of scientific and technical skills, or the exercise of professional judgment." Id.

To determine whether statutory immunity applies, the Court must "first identify the precise government conduct being challenged." Id. Plaintiffs challenge a multitude of actions and inactions on the part of the County and its officials, most particularly the failure of caseworkers to properly and completely investigate maltreatment reports. As Plaintiffs point out, this duty to investigate is not discretionary, but rather is mandated by the Child Abuse Reporting Act, Minn. Stat. § 626.556. Further, Plaintiffs allege that County caseworkers violated specific non-discretionary duties under this Act, including the duty to screen maltreatment reports within 24 hours of receiving them (Am. Compl.

¶ 281), and failing to make personal contact with the child and the caregiver in more than half of all maltreatment-report cases. (Id. ¶ 282.) These alleged failures constitute operational-level, not planning-level decisions. Plaintiffs' negligence claim cannot be dismissed on this basis.

A claim for negligence requires pleading a duty, a breach of that duty, and injury caused by the breach. Thunander v. Uponor, Inc., 887 F. Supp. 2d 850, 869 (D. Minn. 2012) (Nelson, J.) (citations omitted). Plaintiffs have plausibly alleged a duty and a breach, but they have failed to plausibly allege any injury separate from the breach itself. Plaintiffs do not claim, for instance, that the County's negligent investigations caused them to endure further abuse or neglect. Rather, Plaintiffs' only claim is that the negligent investigations caused them to be deprived of their right to investigations that were not negligent. This is insufficient, and Plaintiffs' negligence claim is therefore dismissed without prejudice.

## CONCLUSION

Accordingly, **IT IS HEREBY ORDERED that**:

1. The Hennepin County Defendants' Motion to Dismiss (Docket No. 49) is **GRANTED in part** and **DENIED in part**;

2. The Commissioner's Motion to Dismiss (Docket No. 55) is **GRANTED in part** and **DENIED in part**;

3. Plaintiffs' Third Cause of Action (Docket No. 45, ¶¶ 375-76) is **DISMISSED with prejudice**; and

4.  Plaintiffs' Second and Fourth Causes of Action (Docket No. 45, ¶¶ 371-74; 377-87) are **DISMISSED without prejudice**.

Date: February 16, 2018

*s/Paul A. Magnuson*
Paul A. Magnuson
United States District Court Judge